## Summary of Key Terms of Settlement Agreement

*Stahl, et. al. v. MasTec, Inc., and MasTec North America, Inc.
d/b/a Advance Technologies,* 8:05-cv-01265-RAL-TGW (M.D. Fla.)
*Johns v. MasTec, Inc.,* unfiled (Alameda County, California Superior Court)

I.  On September 20, 2006, MasTec, Inc. and MasTec North America, Inc. ("MasTec") and the named and opt-in plaintiffs[1] in the above-referenced cases, including the putative plaintiffs listed on Exhibit A, reached a tentative agreement to resolve the claims of the named and opt-in plaintiffs and the claims of the putative classes the named and opt-in plaintiffs seek to represent. The tentative settlement is specifically conditioned upon the approval of the District Court in Stahl, et. al. v. MasTec, Inc. and MasTec North America, Inc. The parties hereby agreed to resolve the claims defined in Section I(A)-(C), which could have been litigated in the above-referenced cases, for the gross sum of $12,600,000 (hereinafter referred to as the "Gross Settlement Amount"), inclusive of attorneys' fees and costs, which amount represents the maximum gross amount to be paid to named, and opt-in plaintiffs, and putative class members and plaintiffs' counsel in the event all eligible class members elect to participate in the settlement and timely execute the necessary claim and release forms. MasTec shall retain that portion of the Gross Settlement Amount that is not disbursed to: (1) plaintiffs' counsel as set forth in Section II(E) below; and (2) named and opt-in plaintiffs, and putative class members who timely execute and submit the agreed upon claim and release forms. The following class claims are being settled as part of this agreement:

  A.  All wage & hour, deduction, and any other wage related claims of current or former satellite service technicians of MasTec's Advance Technologies division (hereinafter referred to as "SSTs") through May 26, 2006 that could be brought either before an administrative agency or in a civil lawsuit in either state or federal court alleging that SSTs may not have been paid wages as required by the Fair Labor Standards Act and/or any state law, in Florida, Georgia, Maryland, New Jersey, New Mexico, North Carolina, South Carolina, Tennessee, Texas and Virginia, including, but not limited to, claims concerning the payment of (or failure to pay) wages to SSTs, including claims regarding minimum wage, overtime, liquidated damages, lunch and break time, travel time, deductions, charge backs, penalties, breach of employment contract, negligent supervision, failure to maintain records, failure to enforce company payroll policies, conversion, and other wage related claims.

  B.  All wage & hour, deduction, and any other wage related claims of current or former residential cable technicians responsible for consumer cable

---

[1] In addition to the claims defined in Section I(A) - (C) and III(A), the named and opt-in plaintiffs agree to be bound by those additional provisions set forth in Section III that apply to them.

installation employed by MasTec's Broadband division in California (hereinafter referred to as "RCTs") that could be brought either before an administrative agency or in a civil lawsuit in either state or federal court alleging that RCTs may not have been paid wages as required by the Fair Labor Standards Act or California state law, including, but not limited to, claims concerning the payment of (or failure to pay) wages to RCTs, including claims regarding minimum wage, overtime, liquidated damages, lunch and break time, travel time, deductions, charge backs, penalties, breach of employment contract, negligent supervision, failure to maintain records, failure to enforce company payroll policies, conversion and other wage related claims, and all wage & hour, deduction, and any other wage related claims that could be brought either before an administrative agency or in a civil lawsuit in either state or federal court, and state law claims for breach of employment contract, negligent supervision, failure to maintain records, failure to enforce company payroll policies and conversion by California supervisors Jorge Chavez, Erik Gastelum, and John Pacheco.

C. Any claims that could be brought by SSTs or RCTs alleging MasTec retaliated against them for complaining about their wages or for asserting wage-related claims defined in Section I(A) and (B).

II. The parties agree that among other terms, the settlement agreement to be executed by the parties and to be approved by the Court shall include the following provisions:

A. The term "claim(s)" includes any and all claims that could be brought either before an administrative agency or in a civil lawsuit in either state or federal court alleging that current and former SSTs and RCTs may not have been paid wages as required by the Fair Labor Standards Act and/or any state law in California, Florida, Georgia, Maryland, New Jersey, New Mexico, North Carolina, South Carolina, Tennessee, Texas and Virginia, including, but not limited to, claims concerning the payment of (or failure to pay) wages to SSTs or RCTs, claims regarding minimum wage, overtime, liquidated damages, lunch and break time, travel time, deductions, charge backs, penalties, breach of employment contract, negligent supervision, failure to maintain records, failure to enforce company payroll policies, conversion, and other wage related claims.

B. The parties agree to include a provision stating that by entering into the settlement agreement, MasTec does not admit any liability or wrongdoing and expressly denies the same; it is expressly understood and agreed that the settlement agreement is being entered into by MasTec solely for the purpose of avoiding costs and disruption of ongoing litigation and to settle all outstanding claims. Nothing in the settlement agreement, or any motions filed or Orders entered pursuant to the settlement agreement, is to

be construed as or deemed as admission by MasTec of any liability, culpability, negligence, or wrongdoing and the settlement agreement, each of its provisions, its execution and its implementation, including any motions filed or Orders entered, shall not in any respect be construed as, offered or deemed admissible in any arbitration or legal proceedings for any purpose except in an action or proceeding to approve, interpret or enforce the settlement agreement. Furthermore, neither the settlement agreement, any motions filed or Orders entered pursuant to the settlement agreement, nor any class certification pursuant to the settlement agreement shall constitute an admission, finding or evidence that any requirement for class certification has been satisfied in the *Stahl, Johns* or any other actions, except for limited settlement purposes pursuant to the settlement agreement.

C.  MasTec expressly reserves its right to oppose class certification should the settlement agreement and settlement not be approved and become final.

D.  The parties have tentatively agreed that of the Gross Settlement Amount, $7,089,270.00 will be allocated to back wages and liquidated damages pursuant to MasTec's individualized damage model with the assumption that the unrecorded hours worked per day is approximately 1.61 hours per day of work during the period October 10, 2002 to May 26, 2006. The remaining $5,510,730 shall be allocated by joint agreement of the parties.

E.  The parties have tentatively agreed that of the total $12,600,000 gross settlement amount, class counsel (Burr & Smith, LLP; The Lineach Firm, P.A.; Goldstein, Demchak, Baller, Borgen & Dardarian, P.C.; and Robert S. Norell, P.A.) will seek payment of attorneys' fees and costs equal to thirty percent of the Gross Settlement Amount ($3,780,00.00) regardless of the amounts claimed of the settlement by opt-in plaintiffs and/or putative class members, subject to court approval, and MasTec will not oppose this request. Attorneys' fees will be taken from thirty percent of the back wages and liquidated damages allocated to named and opt-in plaintiffs, and putative class members. Should thirty percent of the Gross Settlement Amount due as attorneys' fees ($3,780,000) not be met by this formula, the remaining amount of attorneys' fees due will be paid from the funds remaining in the Gross Settlement Amount after all back wages and liquidated damages have been paid to those named and opt-in plaintiffs, and putative class members submitting a claims form pursuant to the terms of this agreement.

F.  The parties agree that to the maximum extent permitted by federal and state law, the claims to be settled will be settled as opt-out class actions. Regardless of the claims involved, any opt-in plaintiff and/or putative class member must file a claim and release form in order to receive the amount allocated to that plaintiff, opt-in plaintiff, or putative class

member. Any remaining portion of the Gross Settlement Amount that is not distributed to plaintiffs' counsel, as outlined in paragraph II(D), or eligible class members shall revert to MasTec.

G. The parties shall mutually agree to the language that shall be included on the notice, claim form, release and confidentiality provisions.

H. The parties agree that all amounts allocated to opt-in and putative plaintiffs will be separated into a payment for back wages and liquidated damages. The back wages shall be subject to all required employee paid payroll taxes (federal income taxes, state income taxes, employee's share of FICA taxes, and other state-specific statutory deductions) and other authorized or required deductions (garnishments, tax liens, child support, etc.), which the plaintiffs will be responsible for paying from their allotted settlement proceeds. MasTec shall pay the employer's share of FICA and any other employer state-specific requirements on payments characterized as back wages, which amount shall not be included in, but will be in addition to, the gross settlement. MasTec will report the back wage payment to plaintiffs on a W-2 form and the liquidated damages payment on a 1099 form.

I. The named and opt-in plaintiffs agree not to disclose the terms of this settlement. Notwithstanding this confidentiality obligation, the named and opt-in plaintiffs shall be entitled to disclose the terms and amount of their settlement agreement to immediate family members, legal counsel or financial advisors who agree in writing to be bound by the same confidentiality obligations. They shall also make such disclosures as are required by law, including disclosures to any state, local or federal government agency as is deemed necessary to comply with any applicable laws, including taxation laws and regulations, and including disclosures pursuant to subpoena, provided however, MasTec shall be notified and given an opportunity to respond to such requests. The putative plaintiffs listed on Exhibit A who would be eligible to receive $2,000 or more in accordance with the terms of the tentative agreement and who elect to participate shall execute a general release and claim form that includes a confidentiality provision in order to receive the settlement amounts set forth on Exhibit A. The settlement payments to each of the individuals on Exhibit A shall be divided into two payments. The first payment representing 50% of the individual's total settlement amount, less applicable taxes and deductions, will be made immediately following the Court's final approval of the settlement and each individual's timely execution of the agreed upon claim and release form. The remaining payment representing the balance of the individual's settlement amount will be issued 180 days after the first payment is issued.

Should the putative plaintiffs listed on Exhibit A who would be eligible to receive $2,000 or more in accordance with the terms of the tentative agreement violate the confidential provisions of the claim and release form, they will forfeit any remaining funds to be paid as part of the settlement. The parties agree that should MasTec reasonably believe that plaintiff(s) violated the provisions of the claim and release form, MasTec may terminate the remaining payments to plaintiffs by notifying plaintiff(s) in writing. (If a third-party administrator is responsible for the payments, the third-party administrator will be notified to terminate the remaining payments with copy of such notice to the plaintiff(s).)

Should the plaintiff(s) believe that the remaining payment was terminated improperly, plaintiff(s) shall file a claim with the American Arbitration Association ("AAA") in (City, State) within thirty (30) days following his receipt of such notice, to determine the issue of whether a violation of the confidentiality provision occurred. The parties agree that such arbitration shall be subject to the Commercial Arbitration Rules in effect at the time the settlement agreement is executed.

J. The putative plaintiffs listed on Exhibit A who would be eligible to receive a premium payment of $2000 or more in accordance with the terms of the tentative agreement listed on Exhibit A will not be eligible to receive additional amounts under the individualized damage analysis.

K. Plaintiffs Christopher Creary, Arthur Fulford, Joe Hernandez, Robert Mogollon, Balkrishna Rambharose, Keith Simpson, William Stabenow, James Stahl, and Ralph Wilson shall execute a confidentiality agreement and a general release and claim form in order to receive the figures set forth on Exhibit A. These individuals agree not to disclose the terms of this settlement and shall execute a general release and claim form that includes a confidentiality provision in order to receive the settlement proceeds set forth on Exhibit A. In their confidentiality agreement, Creary, Fulford, Stabenow, Stahl and Wilson will be required to certify under oath that since the Parties reached their tentative settlement, they have not disclosed the terms of this settlement to any other individual, except where required to do so by law. Notwithstanding this confidentiality obligation, Creary, Fulford, Hernandez, Mogollon, Rambharose, Simpson, Stabenow, Stahl and Wilson shall be entitled to disclose the terms and amount of their settlement agreement to immediate family members, legal counsel or financial advisors who agree in writing to be bound by the same confidentiality obligations. They shall also make such disclosures as are required by law, including disclosures to any state, local or federal government agency as is deemed necessary to comply with any applicable laws, including taxation laws and regulations, and including disclosures pursuant to subpoena, provided however, MasTec shall be notified and given an opportunity to respond to such requests.

The settlement payments to each of these individuals shall be divided into two payments. The first payment representing 50% of the individual's total settlement amount, less applicable taxes and deductions, will be made immediately following the Court's final approval of the settlement and each individual's timely execution of the agreed upon claim and release form. The remaining payment representing the balance of the individual's settlement amount will be issued 180 days after the first payment is issued.

Should the Creary, Fulford, Hernandez, Mogollon, Rambharose, Simpson, Stabenow, Stahl or Wilson violate the provisions of the claim and release form, they will forfeit any remaining funds to be paid as part of the settlement. The parties agree that should MasTec reasonably believe that these individuals violated the provisions of the claim and release form, MasTec may terminate the remaining payments to these individuals by notifying them in writing. (If a third-party administrator is responsible for the payments, the third-party administrator will be notified to terminate the remaining payments with copy of such notice to the individual(s).)

Should the individual(s) believe that the remaining payment was terminated improperly, he shall file a claim with the American Arbitration Association ("AAA") in (City, State) within thirty (30) days following his receipt of such notice, to determine the issue of whether a violation of the confidentiality provision occurred. The parties agree that such arbitration shall be subject to the Commercial Arbitration Rules in effect at the time the settlement agreement is executed.

L.  MasTec shall pay for the costs of notice to the putative class, including the costs of searching for additional addresses for any notice returned undeliverable, and all expenses and fees of the claims administrator, including the costs of administering checks to the putative class members and/or opt-in plaintiffs. Plaintiffs' counsel and MasTec shall agree on the selection of the claims' administrator.

M.  Class counsel (Burr & Smith, LLP; The Linesch Firm, P.A.; Goldstein, Demchak, Baller, Borgen & Dardarian, P.C.; and Robert S. Norell, P.A.) and all plaintiffs receiving proceeds under this agreement agree that, for settlement purposes only, the Motor Carrier Act (MCA) defense precludes any overtime claims against MasTec prior to August 10, 2005, except in those states that do not recognize the MCA defense.

N.  As of May 26, 2006, the Parties agree that the tolling agreement defined in paragraph 6 of the First Amended Structured Settlement Agreement is revoked and any statutes of limitation previously tolled by First Amended Structured Settlement Agreement will begin to run as of May 26, 2006.

O. The Parties shall agree to include in their settlement agreement additional provisions that have not yet been finalized, including, but not limited to, a provision that addresses the percentage of opt-out plaintiffs that may invalidate the settlement, the content of the claim and release form, the content of the notices required by the Class Action Fairness Act of 2005, a provision identifying a mutually acceptable claims administrator and the process of administering the claims and payments.

Agreed to this 2nd day of October by:

_____
Sam J. Smith
on behalf of plaintiffs

_____
Lisa A. Schreter
on behalf of MasTec