UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

JAMES STAHL, JOSE A. GONZALEZ,
LEONIDES GONZALEZ, ART FULFORD,
JOHN S. MILLER, CARL SHANE,
HECTOR CUMBALAZA, CARLOS
INCLAN, GARY CAMERON, HECTOR
VASQUEZ, JERRY THOMPSON, KENNETH
WILLIS, RICHARD HAMILTON, KEITH SIMPSON,
ROBERT ROWLAND, BRADLEY COLLINS,
EDDIE ARMOUR, BRANDON PARISH, JERMAINE
DAVENPORT, HOLLIS JOHNS, and JEFFREY
SATALA, individually and on behalf of others
similarly situated,

      Plaintiffs,

v.                          Civil Case No. 8:05-CV-01265-JDW-TGW
                                   COLLECTIVE AND CLASS ACTION

MASTEC, INC., and MASTEC NORTH
AMERICA, INC. d/b/a ADVANCED
TECHNOLOGIES,

      Defendants.
_____/


**PLAINTIFFS CONSENTED MOTION AND MEMORANDUM IN SUPPORT OF
(1) PRELIMINARY APPROVAL OF CLASS AND COLLECTIVE ACTION
SETTLEMENT AND PETITION FOR ATTORNEY FEES; (2) PROVISIONAL
CERTIFICATION OF SETTLEMENT CLASSES; (3) DIRECTING DISTRIBUTION
OF NOTICE OF WAGE/HOUR CLASS AND COLLECTIVE ACTION
SETTLEMENT AND CLAIMS PROCEDURE, AND OPPORTUNITY TO OPT-OUT
OF AND OBJECT TO SETTLEMENT; AND (4) SETTING HEARING FOR FINAL
<u>APPROVAL OF SETTLEMENT</u>**

## I.      <u>INTRODUCTION</u>

Plaintiffs James Stahl, Jose A. Gonzalez, Leonides Gonzalez, Art Fulford, John S. Miller, Carl Shane, Hector Cumbalaza, Carlos Inclan, Gary Cameron, Hector Vasquez, Jerry Thompson, Kenneth Willis, Richard Hamilton, Keith Simpson, Robert Rowland, Bradley Collins, Eddie Armour, Brandon Parish, Jermaine Davenport, Hollis Johns, and Jeffrey Satala (collectively, "named plaintiffs"), individually and on behalf of the classes they seek to represent, by and through this consented motion, request preliminary approval of the Parties' proposed class and collective action Stipulation and Settlement Agreement, attached hereto as Exhibit A (hereinafter, "Settlement"), which resolves all wage-related claims of named plaintiffs, opt-in  plaintiffs, and all putative class members who do not timely opt out of the Settlement (collectively, "Plaintiffs") against Defendants, MasTec, Inc. and MasTec North America, Inc. d/b/a Advance Technologies ("Defendants" or "MasTec").  The named plaintiffs respectfully request that the Court grant preliminary approval of the Settlement within ten days of filing this motion so that the Defendants may include the date for a final approval hearing with the notice it is required to provide pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715.[1]

With this motion, the named plaintiffs request that the Court: (1) preliminarily approve the proposed Settlement; (2) provisionally certify the proposed Settlement Classes; (3) approve the form, content, and distribution of the class notice, claim form, and consent to join form; (4) designate the named plaintiffs as Class Representatives; (5) appoint Plaintiffs'

---

[1] The named plaintiffs submit this consented motion for preliminary approval to the Court without a request for a hearing because neither formal notice nor a hearing is required for preliminary approval, which may be made upon an informal application by the settling parties.  *See*, Manual For Complex Litigation, Fourth (Federal Judicial Center 2004) § 21.632 (hereinafter, "MCL 4th").

counsel as Class Counsel and provisionally approve Class Counsel's request for attorneys' fees and costs; and (6) schedule a formal fairness hearing.  The following schedule sets forth a proposed sequence:

| | |
|---|---|
| • 11 days after Preliminary Approval: | Mailing of Class Notice. |
| • 60 days after mailing of Class Notice: | Last day for Class Members to "opt out" of the Settlement or to submit written objections to the Settlement. |
| • 60 days after mailing of Class Notice: | Last day for filing claim forms and consents to join FLSA settlement. |
| • 100 days after mailing of Class Notice: | Last day for filing and service of papers in support of final Settlement approval. |
| • 110 days after mailing of Class Notice: | Final Settlement approval hearing. |

This sequence is outlined in the proposed order filed herewith as Exhibit 12 to the Settlement.

## II.    BACKGROUND OF THE CASE AND SETTLEMENT DISCUSSIONS

On July 7, 2005, Plaintiffs filed a collective action complaint in the Middle District of Florida, Tampa Division, against MasTec, Inc., asserting violations of the Fair Labor Standards Act 29 U.S.C. § 201 *et seq.* on behalf of themselves and other satellite service and repair technicians who were similarly situated ("SSTs").  Dkt. 1.  On August 11, 2005, MasTec, Inc. filed an answer to the Complaint disputing the material allegations both as to fact and law and denying any liability to the Plaintiffs or any member of the proposed Settlement Classes as defined in the Settlement Agreement, and asserting several affirmative

defenses, including the Motor Carrier Act exemption pursuant to Section 213(b)(1) of the FLSA ("MCA"). Dkt. 4.

Counsel for the Plaintiffs, Burr & Smith, LLP, The Linesch Firm, P.A., Robert S. Norell, P.A., and Goldstein, Demchak, Baller, Borgen & Dardarian, P.C. (collectively, "Class Counsel"), conducted a thorough investigation, including detailed interviews of hundreds of SSTs who worked for MasTec in Florida, Georgia, Maryland, New Jersey, New Mexico, North Carolina, South Carolina, Texas, and Virginia. *See*, Declaration of Sam J. Smith ("Smith Decl."), filed contemporaneously herewith, ¶ 6. Class Counsel's investigation determined that SSTs had numerous potential wage and hour claims against MasTec including claims for minimum wage, overtime, liquidated damages, missed meal, rest and break periods, travel time, deductions, charge backs, penalties, fines, interest, *quantum meruit*, unjust enrichment, failure to reimburse for business-related expenses, failure to maintain records, waiting time violations, unfair competition, failure to furnish wage statements, failure to enforce company payroll policies, claims that could be brought alleging MasTec retaliated against them for complaining about their wages or for asserting wage-related claims, and other wage related claims.

Class Counsel also determined that individuals employed by MasTec's Broadband Division in California as residential cable technicians responsible for consumer cable installations, repairs, or servicing (hereinafter referred to as "RCTs") also had similar claims including minimum wage, overtime, liquidated damages, missed meal, rest, and break periods, travel time, deductions, charge backs, penalties, fines, *quantum meruit*, unjust enrichment, failure to reimburse for business-related expenses, waiting time violations, unfair

competition, failure to maintain records, failure to furnish wage records, failure to enforce

company payroll policies, claims that could be brought alleging MasTec retaliated against

them for complaining about their wages or for asserting wage-related claims, and other wage

related claims.[2]  Smith Decl., at ¶ 7.

On September 16, 2005, based on a joint motion filed by the Parties, the Court

permitted the Parties to conduct early mediation before an experienced class action mediator,

Hunter R. Hughes, III, Esquire.  *See*, Dkt. 38.  This Court stayed further litigation while

Parties have exhausted this process.  *See*, Dkt. 39.  The Parties used extensive payroll

records, daily time sheets, work orders showing the jobs performed by the SSTs and RCTs,

call center data showing the time that the technician called in to report the completion of the

last job of the day, and interviews to create a detailed formula to estimate the potential

damages for SSTs and RCTs.  *Id*. at ¶¶ 10, 13, 14.  The Parties retained expert witnesses to

assist them in evaluating the extensive data maintained by MasTec and DirecTV and

exchanged computer modeling the experts produced.  *Id*. at ¶ 13.  The Parties also exchanged

detailed factual and legal memoranda regarding the alleged claims and defenses in this case.

*Id*. at ¶¶ 10-12.

On October 22, 2007, after more than twelve months of extensive, supervised, arms-

length bargaining and an extended negotiation over the final terms of the Settlement, the

_____

[2] The claims of SSTs and RCTs are set forth in Plaintiffs' First Amended Complaint filed contemporaneously herewith.  Defendants' dispute the material allegations both as to fact and law and deny any liability to the Plaintiffs or any member of the proposed Settlement Classes as defined in the Settlement Agreement, and assert several affirmative defenses, including the Motor Carrier Act exemption pursuant to Section 213(b)(1) of the FLSA ("MCA").

Parties reached the proposed Settlement attached hereto as Exhibit A and briefly summarized below.  *Id*. at ¶ 16.

## III.     SUMMARY OF SETTLEMENT TERMS

The proposed Settlement seeks to resolve Plaintiffs' claims against MasTec as alleged in the First Amended Complaint for a Maximum Gross Settlement Amount of $12.6 million in the event all named and opt-in Plaintiffs and eligible members of the settlement classes elect to participate by timely submitting a claim form and IRS Form W-9.  Specifically, the proposed Settlement provides that with Court approval:

- In addition to the Maximum Gross Settlement Amount, MasTec will pay costs for notice to the classes and Settlement Administration, including the maintenance of a website and toll-free number to assist in communicating with putative class members.

- Class Counsel seek an award of attorneys' fees and costs equal to thirty percent of the maximum Gross Settlement Amount ($3,780,000.00).

- MasTec will pay Plaintiffs, who timely submit a claim form, confidentiality agreement, release and W-9 Form, gross monetary settlement amounts pursuant to a formula agreed to by the parties.

- MasTec will provide service payments to named and opt-in plaintiffs who timely submit a fully executed claim form, release, and confidentiality agreement, release and W-9 form for the time, effort and risk in prosecuting this action, and for resolving additional claims as detailed in Section V.B.

- Settlement funds not paid out of the Maximum Gross Settlement Amount shall remain the sole and exclusive property of MasTec.

## IV.   COLLECTIVE AND CLASS ACTION SETTLEMENT APPROVAL PROCEDURE

The settlement of FLSA collective action claims and state class action claims both require Court approval.  The Eleventh Circuit, as well as the FLSA, require that the Court approve a private settlement of an overtime or minimum wage claim arising under the FLSA.  *See Lynn's Food Stores, Inc. v. United States of America*, 679 F.2d 1350, 1353 (11th Cir. 1982) (district court allowed to approve back wage settlement in order to promote the policy of encouraging settlement of litigation).  For purposes of the proposed settlement, the plaintiffs here request that the Court grant conditional certification of the FLSA claims at issue and provide an opportunity for putative class members to opt into this case pursuant to Section 216(b) of the FLSA.  Court-facilitated notice to the "class" regarding FLSA collective action litigation is warranted when plaintiffs demonstrate that there are others who may wish to opt-in and who are "similarly situated" with respect to the job requirements and pay provisions. *See Hipp v. Liberty National Ins. Co.*, 252 F.3d 1208, 1217-18 (11th Cir. 2001); *Dybach v. State of Fla. Dept. of Corrections*, 942 F.2d 1562, 1567-68 (11th Cir. 1991).  Plaintiffs readily meet this standard.  After the fairness hearing, the Court can determine whether the FLSA settlement is fair and reasonable under the standards set forth in *Lynn's Food Stores.*

The state law class action claims are evaluated pursuant to Federal Rule of Civil Procedure 23(e).  The determination of whether a proposed settlement is fair and reasonable pursuant to Rule 23(e) of the Federal Rules of Civil Procedure involves a two-step process.

6

The first step involves a preliminary determination of whether to give notice of the proposed settlement to members of the class and whether to schedule a final fairness hearing at which to receive evidence in support of and in opposition to the proposed settlement. *In Re Mid-Atlantic Toyota Antitrust Litigation*, 564 F. Supp. 1379, 1384 (D. Md. 1983) (citing *Manual for Complex Litigation* § 1.46 at 62, 64-65 (3rd Ed. 1982)). At this first stage the issue for resolution is whether the proposed settlement falls within the "range of possible approval." *Fresco v. Auto Direct, Inc.*, 2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007); *Horton v. Merrill Lynch*, *Pierce, Fenner & Smith, Inc.*, 855 F. Supp. 825, 827 (E.D. N.C. 1994).

When considering a request for *preliminary* approval of a settlement, the Court should approve notice to the class and set a fairness hearing unless "obvious deficiencies" in the proposed settlement place it outside the "range of possible approval." *In re Prudential Securities Inc.*, 163 F.R.D. 200, 209 (S.D.N.Y. 1995). There is an "initial presumption of fairness when a proposed class settlement was negotiated at arms-length by counsel for the class." *Murillo v. Texas A&M Univ. Sys.*, 921 F. Supp. 443, 445 (S.D. Tex. 1996).

Once the court grants preliminary approval and notice is provided, the Court conducts a "fairness hearing," at which all interested parties are afforded an opportunity to be heard. *Horton*, 855 F.2d at 827. At the fairness a hearing, the Court performs a substantive evaluation of the proposed settlement to determine whether it is fundamentally fair, adequate, and reasonable. *In re Mid-Atlantic Toyota*, 564 F. Supp. at 1384; *Horton*, 855 F. Supp. at 827; *In Re Oracle Sec. Litig.*, 829 F. Supp. 1176, 1179 (N.D. Cal. 1993). In making this determination, courts are to consider the general policy that "[p]articularly in class action

suits, there is an overriding public interest in favor of settlement." *Cotton v. Hinton*, 559 F.2d 1326, 1331 (5th Cir. 1977); *In re Domestic Air*, 148 F.R.D. 297, 305 (N.D. Ga. 1993).

## V.    PRELIMINARY APPROVAL OF THE PROPOSED SETTLEMENT IS APPROPRIATE

The proposed Settlement should be preliminary approved because there is no evidence of collusion, the plaintiffs faced substantial risks, and experienced counsel attest to the fairness of the proposed settlement.  *See e.g., Fresco*, 2007 U.S. Dist. LEXIS 37863; *In re Shell Oil Refinery*, 155 F.R.D. 552, 555 (E.D. La. 1993).

### A.    The Proposed Settlement Was Negotiated At Arms-Length And Is Within The Range Of Possible Approval

In determining whether a settlement was negotiated at arms-length, courts tend to look at whether there was "vigorous and comprehensive litigation" or whether the settlement was a result of collusion among the parties.  *Pickett v. IBP*, 2001 U.S. Dist. LEXIS 22453 (M.D. Fla. December 21, 2001).  The involvement of an objective, third-party neutral indicates arms-length negotiations.  *See Martens v. Smith Barney*, 181 F.R.D. 243, 262-63 (S.D.N.Y. 1998) ("the third party mediation process was an appropriate measure for arm's length negotiations").  Absent fraud and collusion, the court not only may rely on the judgment of experienced counsel, but "should be hesitant to substitute its own judgment for that of counsel."  *Diaz*, 2000 U.S. Dist. LEXIS 14061, * 11 (quoting *Cotton*, 559 F.2d at 1330); *see Fresco*, 2007 U.S. Dist. LEXIS 37863, at **17-18 (finding the support of experienced class action counsel for settlement "weighs strongly in favor of approval").

The Parties reached the proposed Settlement after a year of vigorous and comprehensive mediation under the close supervision of experienced class action mediator

Hunter R. Hughes, III, Esquire and after approximately a year of direct negotiations, including a motion to enforce the Parties' Key Terms of Settlement Agreement. *See*, Smith Decl. at ¶¶ 9-17. Through this process the Parties became intimately familiar with the legal and factual issues presented by this case. This case presented numerous hotly contested issues that required extensive research and investigation. *Id.* at ¶¶ 23-24. The Parties exchanged detailed memoranda to bring these contested issues to the forefront of negotiations. *Id.* at ¶¶ 10-12. These issues included: whether prior to August 10, 2005, SSTs were exempt from the FLSA's overtime provisions under MCA;[3] whether SSTs and RCTs were not paid for hours worked; the amount of time spent by SSTs and RCTs working prior to the first installation or service assignment, traveling to the first job site, taking rest and meal breaks, traveling to the home, and performing work at home; whether these aforementioned activities were compensable; whether MasTec had a policy of prohibiting SSTs and RCTs from performing unauthorized overtime work and whether this policy precluded the recovery for overtime claims for unrecorded hours; whether MasTec was aware of off-the-clock work; whether MasTec violated state wage and hour laws in eleven states; and whether Congress could reinstate the Motor Carrier Act exemption. *Id.* at ¶ 23. The Parties conducted interviews of each others witnesses, including a vice president, several former regional operation managers and local field and office supervisors. *Id.* at ¶¶ 10-14. The Parties exchanged extensive documents, declarations, damage calculations, compensation information and enlisted the help of expert witnesses to evaluate extensive

---

[3] After August 10, 2005, the FLSA was changed to exclude application of the MCA exemption to employees, like SSTs, who drive vehicles weighing less than 10,001 lbs. Additionally, the MCA exemption does not affect RCT's because the California MCA also excludes the RCTs from the state MCA exemption.

payroll and call center data.  *Id*. at ¶ 19.  Moreover, Class Counsel interviewed over 350

plaintiffs and witnesses (including, but not limited to, former regional directors, office

managers, field supervisors, warehouse technicians, warehouse managers, data entry clerks,

quality control technicians, and payroll personnel).  *Id.* at ¶¶ 6, 7, 26.

      Class Counsel have vigorously represented their clients in this action and have

obtained a thorough familiarity with the complex factual and legal issues presented here.

From this experience, Class Counsel has certified that the proposed Settlement is in the best

interests of the Plaintiffs and the proposed Settlement Class Members.  *Id*. at ¶ 19.  The

Parties used extensive call center and payroll data to construct an appropriate back pay model

that provides for the recovery of minimum wage, deductions, and overtime compensation.

*Id*. at ¶ 17.  This back pay model was then used to create an estimate of the value of an SST

claim during three periods (the period prior to August 10, 2005 when the Motor Carrier Act

presented a defense to the overtime claims, the period between August 11, 2005 and May 26,

2006, when MasTec took additional steps to address the alleged overtime and deduction

claims at issue here; and the period between May 27, 2006 and September 28, 2007, which is

the ending date of the classes).  *Id*.  One half of the potential amount recovered for class

members represents liquidated damages.  *Id.*  In addition to the potential Maximum Gross

Settlement Amount, MasTec has agreed to pay the employer's share of FICA and FUTA

taxes, and any other state-specific requirements on the back pay awards and all reasonable

costs of notice and settlement administration.  *Id*.

**B.      Service Payments are Reasonable and Routinely Awarded**

"Courts routinely approve incentive awards to compensate named plaintiffs for the

services they provide and the risks they incurred during the course of the class action

litigation." *Ingram v. The Coca-Cola Co.*, 200 F.R.D. 685, 694 (N.D. Ga. 2001) (*quoting In

Re S. Ohio Correctional Facility*, 175 F.R.D. 270, 272 (S.D. Ohio 1997) (approving

$303,000 payment to each class representative plaintiff in employment case where class

members on average received $38,000).[4]  In awarding service payments to named plaintiffs

and opt-in plaintiffs for time, effort, risk and service provided to Settlement Class Members

in litigating this action, the proposed Settlement does not improperly grant preferential

treatment to class representatives.

The Parties have earmarked a portion of the Maximum Gross Settlement Amount to

compensate the named plaintiffs and opt-in plaintiffs who timely submit claim and W-9

forms and have spent a significant amount of time and effort in prosecuting this action and

fostering the Settlement of this case.  It is their diligence and fortitude that will enable

otherwise silent class members to bring their claims forward and seek a settlement payment.

The Parties have allocated service payments as follows: (i) $9,800 to Plaintiffs Art Fulford

and Keith Simpson as payment for their wage and hour claims, for executing a

confidentiality agreement and a general release, for releasing their alleged retaliation claims

---

[4] District courts in the Eleventh Circuit have routinely approved settlements granting named plaintiffs additional relief. *See, e.g., Weddington v. Ingles Markets, Inc.*, No. 4:98-CV 0044-HLM, Slip Op., at 29-31 (N.D. Ga. April 15, 1999) (larger award for named plaintiffs justified because the "class representatives take on the onerous burdens, responsibilities and risks of litigation and perform services that are not required of class members"); *Haynes v. Shoney's, Inc.*, 1993 U.S. Dist. Lexis 749, *23, *137 (N.D. Fla. 1993) (approving as fair, adequate and reasonable a settlement that afforded each named plaintiff $100,000, while class members were required to file claim forms and provided a *pro rata* share of the remaining funds); *Shores v. Publix Super Markets, Inc.*, No. 95-1162-CIV-T-25E, Consent Decree, Dkt. 319, at 90-91 (M.D. Fla. May 23, 1997) (named plaintiffs provided additional compensation for signing a full-release of claims, for time spent in depositions, for risk of litigation, and for spending substantial time and effort).

and for their significant involvement and time spent preparing for mediation for the benefit of the Settlement Classes; (ii) $58,500 to Plaintiff James Stahl, as payment for his wage and hour claims, for executing a confidentiality agreement and a general release, for resolving his alleged Florida Whistleblower Act claim, Fla. Stat., Section 448, his retaliation claims, and for his time and effort in representing the Settlement Classes in numerous mediations; (iii) $8,500 to Opt-In Plaintiffs Angel Candelario, Christopher Creary, Joe Hernandez, Robert Mogollon, Balkrishna Rambharose, and Ralph Wilson for their wage and hour claims, their time and effort in mediation, for executing a confidentiality agreement and a general release, and for releasing their alleged retaliation claims; (iv) $21,500 each to John Pacheco, Erik Gastelum, and Jorge Chavez for their wage and hour claims, their time and effort in mediation, for executing a confidentiality agreement and general release, for releasing their alleged retaliation claims, and for releasing their claims that they were misclassified by MasTec as supervisors exempt from overtime and minimum wage under Federal and California law; (v) $3,000 each to named Plaintiffs Jose A. Gonzalez, Leonides Gonzalez, John S. Miller, Carl Shane, Hector Cumbalaza, Carlos Inclan, Gary Cameron, Hector Vasquez, Jerry Thompson, Kenneth Willis, Richard Hamilton, Robert Rowland, Bradley Collins, Eddie Armour, Brandon Parish, Jermaine Davenport, Hollis Johns, and Jeffrey Satala and Opt-In Plaintiff William Stabenow for their wage and hour claims, for executing a confidentiality agreement and a general release, for releasing their alleged retaliation claims, and in recognition of substantial services performed for the benefit of the Settlement Classes; and (vi) $1,500 each to Opt-in Plaintiffs Jeremy Bush and Tiwan Cobb for their wage and hour claims, for executing a release, for releasing their alleged retaliation claims, for their

time and effort in mediation and in recognition of substantial services performed for the

benefit of the Settlement Classes; (vii) and $500 to the Opt-In Plaintiffs listed on Exhibit 11

to the Settlement Agreement, for their wage and hour claims, for executing a release, for

releasing their alleged retaliation claims and in recognition of substantial services performed

for the benefit of the Settlement Classes.  The service payments contemplated by the

proposed Settlement are intended to fairly compensate the named plaintiffs and opt-in

plaintiffs for the risks, costs, and time endured for bringing this action forward.  As such, the

service payments proposed by the Settlement are fair and reasonable.

## VI.    THE PAYMENT OF ATTORNEYS' FEES IS REASONABLE

Pursuant to Rules 23(f), 23(g) and 54(d)(2), Plaintiffs' counsel move the Court to be

designated as Class Counsel and to preliminarily approve for notice proposes an award of

attorneys' fees, expenses and costs that is equal to thirty percent of the Gross Settlement

Amount or $3,780,000.00.  MasTec does not oppose this request.  As required by Rule 23(h),

Plaintiffs' counsel has conducted a significant investigation of the claims at issue, has

experience handling class actions and complex litigation, is knowledgeable about wage and

hour laws, and will continue to commit substantial resources to representing the putative

class.  Smith Decl. at ¶¶ 6, 7,10-26.  In addition, a recovery of thirty percent of the Maximum

Gross Settlement Amount created by this Settlement Agreement is within the range of

reasonableness such that notice of this request should be provided to putative class members.

After the fairness hearing, the Court may then make a final determination that the fees,

expenses and costs requested are fair and reasonable.

The attorneys' fees, expenses, and costs here are being compensated from a common fund pursuant to *Camden I Condo. Assoc. v. Dunkle*, 946 F.2d 768, 774 (11th Cir. 1991) (holding that "[h]enceforth in this circuit, attorneys' fees awarded from a common fund shall be based upon a reasonable percentage of the fund established for the benefit of the class."). In *Camden I*, the Eleventh Circuit indicated that attorneys' fees in the 20 to 30 percent range are appropriate.[5]  *Camden I*, 946 F.2d at 775.  The Supreme Court and the Eleventh Circuit have held that it is appropriate that the attorneys' fees be awarded on the entire Maximum Gross Settlement Amount even though amounts to be paid to settlement class members who do not file a claim form will remain the sole and exclusive property of MasTec.  *See Boeing Co. v. Van Gemert, et al.*, 444 U.S. 472, 480-81 (1980); *Waters v. International Precious Metals Corp.*, 190 F.3d 1291, 1296-97 (11th Cir. 1999).  As the Manual for Complex Litigation states, "a common fund is itself the measure of success . . . [and] represents the benchmark from which a reasonable fee will be awarded." MCL 4th §14.121.  Here, Plaintiffs' counsel obtained a common fund of $12.6 million.  In addition, MasTec will pay all of the costs of the third-party Settlement Administrator in mailing notices and processing claim forms.

The percentage requested from the Maximum Gross Settlement Amount here is reasonable in light of the fact that a Maximum Gross Settlement Amount of $12.6 million

---

[5] District courts in the Eleventh Circuit have approved attorneys' fee award of thirty percent or greater.  *See Diaz*, 2000 WL 1682918 at **20-21 (M.D. Fla. 2000) (thirty percent of common fund approved in statutory fee shifting case); *Kemper v. Rent-A-Center, Inc.,* Case No.  4:00 CV 435-RH, Dkts. 14-15 (N.D. Fla. 2001) (thirty-three and one-third percent awarded to plaintiffs' counsel under common fund approach in FLSA settlement).  In *In re Rite Aid Securities Litigation*, the Third Circuit noted three studies which found that fee awards of approximately 30% of the common fund were not unusual.  396 F.3d 294, 303 (3d Cir. 2005).  The court in *In re AremisSoft Sec. Litig.*, stated that "[s]cores of cases exist where fees were awarded in the one-third to one-half of the settlement fund."  210 F.R.D. 109, 128 (D.N.J. 2002).  *See*, *Erie County Retirees Assoc.*, 192 F. Supp.2d 369, 382-83 (38% of common fund was awarded in ADEA case); *Frank v. Eastman Kodak Co.*, 228 F.R.D. 174, 179-80 (W.D.N.Y. 2005) (almost 40% of $125,000 common fund awarded in a FLSA case)

was obtained in spite of MasTec's vigorous defenses, including its defense that the MCA precludes overtime claims under the FLSA and certain state laws prior to August 10, 2005. *See*, Smith Decl. at ¶¶ 11, 20, 23, 24.  This defense could have presented a total defense to the overtime claims alleged in the initial complaint.  In the face of this potential defense, Plaintiffs' asserted minimum wage, state common law, and statutory wage and hour claims. This required Plaintiffs' counsel to locate and interview potential representative plaintiffs from eleven states, conduct extensive research regarding the laws of these states and persuade MasTec that these state law class claims were potentially meritorious.  *Id.* at ¶ 26.

This case settled after more than two years of informal, yet voluminous discovery, mediation and numerous face-to-face settlement negotiations.  *Id.*  Class Counsel and MasTec hired expert witnesses and spent an enormous amount of time and effort modeling the potential damages at issue in this case.  *Id.* at ¶¶ 10-17.  The putative class has benefited by these efforts and it is appropriate that the class pay a contingent fee for these services.[6] Had this case been litigated, Class Counsel would have sought to send an FLSA notice to all putative class members.  These class members would have been asked to enter into a contingency fee agreement with their counsel agreeing to forty percent of any recovery.  *Id.* at ¶ 26; *see Venegas v. Mitchell*, 495 U.S. 82 (1990) (amount agreed to be paid by each plaintiff for his or her share of the attorneys' fees and costs may exceed the amount that a defendant is required to pay pursuant to a fee-shifting statute).  Class Counsel have agreed to accept a reduced contingency fee of thirty percent because this case settled after extensive mediation and negotiations, but before significant litigation occurred.  The attorneys' fees

---

[6] Putative Class Counsel incurred more than $109,000.00 in expenses in litigating this case to date.  Smith Decl. at ¶ 26.

requested by Class Counsel should not be reduced further because counsel efficiently resolved this case through extensive mediation and negotiation efforts including a motion to enforce the Parties' Summary of Key Terms of Settlement Agreement, rather than prolonging the litigation and increasing their potential fees.  As the Manual for Complex Litigation recognizes, "one purpose of the percentage method is to encourage early settlements by not penalizing efficient counsel, thus ensuring competent counsel continue to be willing to undertake risky, complex, and novel litigation." MCL 4th §14.121.

Had this case not settled, Plaintiffs' counsel would have vigorously litigated the case without any promise of success or compensation.  Smith Decl. at ¶ 24.  At the time of the Settlement, MasTec had indicated that it would file a motion for summary judgment regarding its MCA defense if the case continued in litigation.  *Id*. at ¶ 20.  If MasTec had filed its motion for summary judgment under the MCA, this Court could have ruled against Plaintiffs, thus extinguishing any FLSA overtime recovery for time period prior to August 10, 2005 when the SAFETEA-LU limited the impact of the MCA on plaintiffs' FLSA overtime claims.  *Id.*  In addition, if a settlement was not obtained, Congress could have amended the SAFETEA-LU to reinstate the MCA defense for FLSA overtime claims after August 10, 2005.  *Id*. at ¶ 21.

Even if Plaintiffs survived summary judgment, Plaintiffs' counsel would have expended a substantial amount of money preparing for trial (including hiring experts, engaging in significant discovery, including expert discovery, drafting motions *in limine*) without any guarantee of success at trial.  *Id*. at ¶ 24.  And even if Plaintiffs succeeded at trial, MasTec could have appealed the judgment.  In addition, MasTec would have likely

opposed class certification and/or moved to decertify any classes that were certified.  At every step of the litigation, MasTec could have succeeded.  Therefore, Plaintiffs were at great risk for nonpayment.  *See e.g.*, *Bonilla v. Baker Concrete Construction, Inc.*, 487 F.3d 1340 (11th Cir. 2007)(plaintiffs' pre-shift and post-shift work found not to be compensable).  The substantial risks inherent in this case strongly support settlement, the thirty percent fee requested here, and warrant notice to the classes of plaintiffs' attorneys' fee request.  At the final fairness hearing, the Court will be in a position to grant final approval to the fee request after taking into account any objections to the provisionally approved fee.

### VII.  CERTIFICATION OF THE CLASS ACTION SETTLEMENT CLASSES IS PROPER

A class action may be certified under the Federal Rule of Civil Procedure if all four prerequisites under Rule 23(a) are established and at least one subsection under Rule 23(b) is met.  *Amchem Products, Inc., et al. v. George Windsor, et al*., 521 U.S. 591, 618-620 (1997).  The district court is given broad discretion in its decision to certify a Rule 23 class.  *Klay v. Humana, Inc.*, 382 F.3d 1241, 1251 (11th Cir. 2004).

The Plaintiffs request that the Court provisionally certify for settlement purposes only: (1) an opt-out class made up of any and all SSTs employed by MasTec at any time during the period from January 1, 2004 through, and including, September 28, 2007 in Florida, Georgia, Maryland, New Jersey, New Mexico, North Carolina, South Carolina, Texas, and Virginia; and (2) an opt-out class made up of all persons employed by MasTec's Broadband division in California as RCTs responsible for residential consumer cable installations, repairs, or servicing at any time during the period from October 10, 2001

through, and including, December 31, 2005.  These classes are appropriate under Rules 23(a)

and 23(b)(3) for the reasons set forth below.

###### A.  <u>Rule 23(a) is Satisfied</u>

Rule 23(a) is satisfied because the proposed Settlement Classes meet the requirements

of: (1) numerosity; (2) commonality; (3) typicality; and (4) adequacy of representation.

###### i.  Numerosity

The numerosity requirement is met if the class is so large that joinder of all members

would be impracticable.  *See Cox v. American Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th

Cir. 1986).  There are more than twelve thousand potential class members dispersed within

Florida, Georgia, Maryland, New Jersey, New Mexico, North Carolina, South Carolina,

Texas, and Virginia.  *See* Smith Decl, at ¶ 26.  In addition, there are hundreds of RCT's

located throughout California.  Due to the large number of Settlement Class Members and

their geographic dispersion, joinder is impracticable and the numerosity requirement under

Rule 23(a)(1) is satisfied.  *Id.*

###### ii.  Commonality

Commonality requires the presence of either a common question of law or

fact. *Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 725 (11th Cir. 1987).  The

commonality requirement is not a demanding one.  *Hanlon v. Chrysler Corp.*, 150 F.3d 1011,

1019 (9th Cir. 1998).  It is not necessary that all the questions of fact and law affecting class

members be common.  *Cox*, 784 F.2d at 1557; *Grilliasca v. Hess Corp*, 2007 U.S. Dist.

LEXIS 53356, **29-30 (M.D. Fla. July 24, 2007); *Diaz*, 165 F.R.D. at 693.  "Rather, the

issue turns on whether there exists at least one issue affecting all or a significant number of

proposed class members." *Kreuzfeld A.G. v. Carnehammar*, 138 F.R.D. 594, 599 (S.D. Fla. 1991).

As Plaintiffs have alleged in their First Amended Complaint, the proposed Settlement Classes share common questions of law in pursuit of claims for minimum wage, overtime, missed meal, rest and break periods, travel time, deductions, charge backs, penalties, fines, interest, *quantum meruit*, unjust enrichment, failure to reimburse for business related expenses, failure to maintain records, failure to furnish wage records, waiting time violations, unfair competition, and failure to enforce company payroll policies. The proposed Class Members are factually linked in that they were compensated in the same manner (on an hourly basis during training and thereafter on a piece-work basis), were all charged with performing installation and service job duties, and were allegedly required to follow the same practices and policies that are the subject of this litigation. Smith Decl. at ¶¶ 6-7. These similar factual and legal issues readily satisfy the commonality requirement of Rule 23(a)(2).

  iii.  **Typicality**

The typicality requirement is met if the claims of the named representatives are typical of the claims of the class. As with the commonality requirement, the claims of the proposed class and named plaintiffs need not be identical. *Pickett*, 2001 U.S. Dist LEXIS 22453 at **11-13. The claims of the named representatives in this case are typical of the claims of the classes they represent because they "arise from the same event or pattern or practice and are based on the same legal theory." *Id.* (quoting *Taylor v. Flagstar Bank*, 181 F.R.D. 509, 517 (M.D. Ala. 1998)); *see, Appleyard v. Wallace*, 754 F.2d 955, 958 (11th Cir. 1985) (typicality is satisfied when the named plaintiffs and class members' claims arise from

similar legal or remedial theories, even if there are substantial factual distinctions between their claims); *Hanlon*, 150 F.3d at 1019 (finding that the limited objective and broad composition of the representative parties was sufficient to satisfy typicality). The common issues of fact and law, discussed in the section above, affect the claims of the named plaintiffs and the claims of the proposed Settlement Class Members equally. *See, Southwest v. Falcon*, 457 U.S. 147, 156 (1982) (finding that the commonality and typicality requirements of Rule 23 "tend to merge").

iv.        <b>Adequacy of Representation</b>

Rule 23(a)(4) requires that the named plaintiffs fairly and adequately represent and protect the interests of the class. Courts apply two criteria to evaluate adequacy: (1) the named plaintiff must possess interests that are not antagonistic to those of the putative class, and (2) the plaintiffs' counsel must be qualified to represent the class. *Griffen v. Carlin*, 755 F.2d 1516, 1533 (11th Cir. 1985); *Hanlon*, 150 F.3d at 1021-22. Both criteria are satisfied here. Named plaintiffs' interests are not adverse to that of the proposed Settlement Class Members. Named plaintiffs' seek to represent Class Members on behalf of their claims that MasTec failed to compensate them properly under the wage and hours laws of their state. As such, named plaintiffs do not have claims that conflict with the claims of the proposed Settlement Class Members. Furthermore, named plaintiffs generally will receive settlement payments derived pursuant to the same formula as the remaining Class Members.

Class Counsel are qualified to represent the interests of the proposed Classes having extensive experience litigating wage and hour collective and class actions. Smith Decl. at ¶ 2. In fact, this Court has appointed Burr & Smith, LLP and David Linesch as Class Counsel

20

in other litigation.  *See*, *Carter v. West Publishing Co.*, 1999 U.S. LEXIS 8231 (M.D. Fla., May 20, 1999), *rev'd on other grounds*, 225 F.3d 1258 (11th Cir. 2000); *Perry, et al. vs. Kash n' Karry Food Stores, Inc.*, Case No. 8:03-CV-01737-T24-MAP (M.D. Fla. 2003). Class Counsel have and will continue to adequately represent the interests of the named plaintiffs and proposed Settlement Class Members.

> **B.      Rule 23(b)(3) is Satisfied**

The proposed Settlement Classes also meet the requirements of Rule 23(b)(3) because (1) common questions of the class predominate over questions that affect individual members and (2) class resolution is superior to other available methods.  Rule 23(b)(3) allows class certification where common questions of law and fact predominate over individual questions and class treatment is superior to individual litigation.  When assessing predominance and superiority, the court may consider that the class will be certified for settlement purposes only.  *Amchem Products, Inc.*, 521 U.S. at 618-20.  A showing of manageability of trial is not required.  *Id*.  The test is "whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Id*. at 623.

> **1.      Predominance**

The proposed Settlement Classes here are sufficiently cohesive to warrant certification.  The common questions of law affecting proposed Class Members in this case predominate over questions that may affect individual members.  In analyzing predominance, as with commonality, "[i]t is not necessary that all questions of fact or law be common, but only that some questions are common and that they predominate over individual questions." *Cox*, 784 F.2d at 1557; *Klay*, 382 F.3d at 1254-55.

Here, proposed Settlement Class Members were allegedly instructed to follow the same policies and practices that resulted in this litigation, such as allegedly working unreported hours and receiving improper wage deductions.  Smith Decl. at ¶¶ 6-7.  The claims they set forth as a class (claims related to minimum wage, overtime, missed meal, rest and break periods, travel time, deductions, charge backs, penalties, fines, interest, *quantum meruit*, unjust enrichment, failure to reimburse for business-related expenses, failure to maintain records, failure to furnish wage records, waiting time violations, unfair competition, failure to enforce company payroll policies, and other wage related claims) predominate over any individual claims class members may otherwise wish to bring forward.  In addition, MasTec's defenses to this case, including its defenses that the MCA applied to pre-August 2005 FLSA overtime claims and that the company implemented reasonable procedures to limit the working of unauthorized overtime hours are class wide defenses to the overtime claims asserted.  Other class issues include the appropriateness of liquidated damages and the length of the statute of limitations for the overtime and minimum wage claims asserted.  The fact that individualized damages are calculated in the settlement does not prohibit certification under Rule 23(b)(3).  *See Klay*, 382 F.3d at 1259-60 (damages calculated pursuant to a formula or other "mechanical method" supports predominance inquiry).  Thus, the proposed Classes here meet the predominance standard because common questions of fact and law predominate over individual damage issues.

### 2.    Superiority

To be certified under Rule 23(b)(3), the Court must also find that "a class action is superior to other available methods" of resolving the controversy.  Rule 23(b)(3) lists four

nonexclusive factors bearing on the superiority determination, including: (1) the interest of members of the class in individually controlling the prosecution or defense of separate actions; (2) the extent and nature of any litigation concerning the controversy already commenced by or against members of the class; (3) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (4) the difficulties likely to be encountered in the management of a class action.

     Class Counsel have interviewed hundreds of potential plaintiffs and opt-in plaintiffs, and are unaware of any of these individuals currently interested in "controlling the prosecution . . . . of separate actions."  Smith Decl. at ¶¶ 6-7.  Class Counsel are only aware of two individuals, out of the thousands of SSTs and RCTs potentially affected, who has pending litigation related to the controversy asserted herein.[7]  *Id*. at ¶ 27.  "The interests of justice will be well served by resolving the common disputes of potential class members in one forum." *Bolanos v. Norwegian Cruise Lines Ltd.*, 212 F.R.D. 144 (S.D.N.Y. 2002). Litigating this case in more than one forum would not only waste judicial reasons but create the risk of conflicting outcomes.  In addition, because the Court is "[c]onfronted with a request for settlement-only class-certification," this Court "need not inquire whether the case, if tried, would present intractable management problems, *see*, Fed. R. Civ. Pro. 23(b)(3)(D), for the proposal is that there be no trial."  *Amchem*, 521 U.S. at 620.  As such, there is superiority to maintaining this action as a class action as opposed to any alternate methods available.

---

[7] *See Williams v. MasTec North America, Inc.,* Case No. 07-22520-CIV-GOLD/TURNOFF (S.D. Fla. 2007)(collective action filed by single plaintiff); *Arnold v. MasTec North America, Inc*., Case No. HG07331586 (Cal. Super. Ct. 2007) (individual action filed by single plaintiff in California state court).

**VIII.**   **THE COURT SHOULD DIRECT DISTRIBUTION OF NOTICE TO SETTLEMENT CLASSES BECAUSE THE NOTICES CONFORM TO FEDERAL LAW**

The proposed Class Notice meets the standards set forth in Rule 23(c)(2)(B) for

classes certified under Rule 23(b)(3).  The Notice clearly and accurately describes the nature

of the action, the definition of the classes certified, and the class claims and defenses.

Notice, Exh. 10, at 3-6.  The Notice also informs putative class members that they may enter

an appearance through counsel if the member so desires, that the Court will exclude from the

class any member who requests exclusion, and explains the binding effect of a class

judgment on the class under Rule 23(c)(3).  *Id*. at 14.  Finally, the Notice provides putative

class members with an opportunity to file objections to the settlement as required by Rule

23(e)(4)(A).  *Id*. at 15-16.  Pursuant to Section 216(b) of the FLSA, the Notice also informs

potential class members that they must file a claim form[8] containing a consent to join the

case in order to join in the settlement.  Individuals who do not timely file the claim form will

not waive their FLSA claims.

This Court should order distribution to the Settlement Classes of the Class Notice in

the manner described in the Settlement.  Federal Rule of Civil Procedure 23(e)(1)(B) requires

the Court to direct notice to class members "in a reasonable manner."  *Eisen v. Carlisle &*

---

[8] Exhibit 3 to the Settlement contains a claim form for former employee class members who are not slated to receive a service payment; Exhibit 4 contains a claim form for current employee class members who are not slated to receive a service payment.  Exhibits 5 – 8 contain claims forms for class members who are entitled to receive service payments (separate forms will be sent to individuals based on whether they are current or former employees and whether they are over 40 years of age.  Exhibit 9 contains a claim form for Plaintiffs or Opt-In Plaintiffs Creary, Fulford, Stabenow, Stahl, and Wilson, who will certify that they have maintained confidentiality of the Settlement.

*Jacquelin*, 417 U.S. 156, 173, 94 S. Ct. 2140 (1974).  Notice by mail provides adequate "individual notice to all members who can be identified through reasonable effort."  *Id.* Where the names, addresses, and Social Security numbers of the class members are easily ascertainable, individual notice through the mail is "clearly the 'best notice practicable.'"  *Id.* at 175.

IX.    <u>THE COURT SHOULD SET A HEARING FOR FINAL APPROVAL OF SETTLEMENT</u>

The Plaintiffs propose that the Court set a date for the final approval hearing that is approximately 110 days after the Court grants preliminary approval of the proposed Settlement.  This date would allow a reasonable period for mailed notice and for class members to submit claims and opt-in, object to or opt out of the settlement, but would not unduly delay the class members' receipt of their share of the settlement fund.

X.    <u>CONCLUSION</u>

The Plaintiffs have afforded the Court with reasonable justification to preliminarily approve the Settlement pursuant to Rule 23(e) and to enter the Plaintiffs consented proposed preliminary approval Order: (1) granting preliminary approval of the Settlement; (2) designating the named plaintiffs as Class Representatives; (3) designating Plaintiffs' counsel as Class Counsel and preliminarily approving Putative Class Counsel's request for attorneys' fees and expenses; (4) provisionally certifying the proposed classes; (5) directing distribution of notice of settlement and providing an opportunity for class members to opt-in, opt-out or object to Settlement pursuant to Section 216(b) of the FLSA and Rule 23; and (6) setting the hearing date for the final approval of the Settlement.

Dated: November 21, 2007                    Respectfully submitted,


                                            /s/ Sam J. Smith
                                            SAM J. SMITH, Trial Counsel
                                            Florida Bar Number 818593
                                            MARGUERITE M. LONGORIA
                                            Florida Bar Number 998915
                                            Attorneys for Plaintiffs James Stahl, et al.
                                            BURR & SMITH, LLP
                                            442 West Kennedy Blvd., Suite 300
                                            Tampa, Florida  33606
                                            813-253-2010
                                            813-254-8391 (facsimile)
                                            ssmith@burrandsmithlaw.com
                                            mlongoria@burrandsmithlaw.com

                                            DAVID J. LINESCH
                                            Florida Bar Number 376078
                                            Attorneys for Plaintiffs James Stahl, et al.
                                            THE LINESCH FIRM
                                            700 Bee Pond Road
                                            Palm Harbor, Florida  34683
                                            727-786-0000
                                            727-786-0974 (facsimile)
                                            laborlaw@lineschfirm.com

                                            DAVID BORGEN
                                            California Bar Number 99354
                                            Attorney for Plaintiffs James Stahl, et al.
                                            GOLDSTEIN, DEMCHAK, BALLER,
                                                BORGEN & DARDARIAN, LLC
                                            300 Lakeside Drive, Suite 1000
                                            Oakland, California  94612
                                            510-763-9800
                                            510-835-1417 (facsimile)
                                            borgen@gdblegal.com

ROBERT S. NORELL
Florida Bar Number 996777
Attorney for Plaintiffs James Stahl, et al.
ROBERT S. NORELL, PA
8751 W. Broward Boulevard, Suite 410
Plantation, FL  33324
954-617-6017
954-617-6018 (facsimile)
robnorell@aol.com

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 21st day of November 2007, I electronically filed the foregoing with the Clerk of the Court by using the CM/ECF system which will send a notice of electronic filing to the following: Lisa A. Schreter, Littler Mendelson, PC, 1900 Marquis One Tower, 3348 Peachtree Road, NE Suite 1100, Atlanta, GA 30326 and Lori Anne Brown, Littler Mendelson, P.C., One Biscayne Tower, Suite 1500, Two South Biscayne Blvd., Miami, FL 33131; William C. Frye, Mark D. Kiser, Trenam, Kemker, Scharf, Barkin, Frye, O'Neill & Mulls, P.A., 101 E. Kennedy Blvd., Suite 2700, Tampa, Florida  33602

s/ Sam J. Smith
Attorney

27